UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>LTD FINANCIAL SERVICES LP and LTD ACQUISITIONS LLC,<br><br>    Defendants. | Case No.: 19-cv-630<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5. Defendant LTD Financial Services, L.P. ("LTDFS") is a foreign limited partnership with its principal offices located at 7322 Southwest Freeway Ste 1600, Houston, Texas 77074.

6. LTDFS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. LTDFS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. LTDFS is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

9. LTDFS is a "debt collector" as defined in 15 U.S.C. § 1692a.

10. Defendant LTD Acquisitions, LLC ("LTDA") is a foreign limited liability company with its principal place of business located at 3200 Wilcrest, Suite 600, Houston, Texas 77042.

11. Upon information and belief, LTDA and LTDFS are affiliated companies.

12. LTDA is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family, or household purposes.

13. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

14. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, App. No. 18-1042, 2019 U.S. App.

LEXIS 5336, at *10 (3d Cir. Feb. 22, 2019); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

15. The principal purpose of LTDA's business, and LTDA's principal purpose, is the collection of consumer debts. *See Barbato*, 2019 U.S. App. LEXIS 5336, at *18-19.

16. A google search for "LTD Acquisitions" did not return any websites that appeared to be operated by or on behalf of LTDA.

17. Upon information and belief, LTDA acts as a debt purchaser and owner, and sometimes engages LTDFS or unaffiliated third-party agents to attempt to collect debts on its behalf. *See, e.g., Burns v. LTD Acquisitions, LLC (In re Burns)*, Ch. 7 Case No. 08-34079, Adversary No. 09-3449, 2010 Bankr. LEXIS 896, at *1-2 (Bankr. S.D. Tex. Feb. 18, 2010) (debtor's adversary proceeding alleged that LTDA commenced a collection lawsuit against her to collect a debt that had been discharged in bankruptcy).

18. Upon information and belief, LTDA has no employees.

19. Upon information and belief, LTDA, or its affiliated entities, has been the named plaintiff in consumer debt collection lawsuits filed in Wisconsin.

20. Upon information and belief, all proceeds from the debt collection claims instituted on LTDA's behalf go to LTDA.

3

21. Upon information and belief, instructions have been sent to credit bureaus in the name of LTDA, or its affiliates, concerning more than 250 distinct consumer debt accounts of Wisconsin residents.

22. Upon information and belief, after a judgment is entered in the name of LTDA, or its affiliates, LTDA sometimes attempts to obtain satisfaction of that judgment in whole or in part through wage garnishment.

23. Upon information and belief, LTDA's business focuses principally or entirely on acquiring and servicing non-performing and semi-performing loans.

24. Upon information and belief, LTDA's business is sustained by collection of consumer debts and is unaided by any other significant sources of revenue.

25. LTDA holds "Debt Collector," "Debt Buyer," or "Collection Agency" licenses in several states. http://www.nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/1120763 (Idaho, Maryland, Oregon, Rhode Island); *see also e.g.,* https://coag.gov/sites/default/files/contentuploads/cp/ConsumerCreditUnit/InternetReports/carreport.pdf (list of Collection Agencies licensed by the State of Colorado).

26. LTDA is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

27. On or about June 4, 2018, LTDFS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to LTDA. A copy of this letter is attached to this complaint as Exhibit A.

28. Upon information and belief, the alleged debt that LTDFS was attempting to collect was incurred by use of a personal credit card account, used only for personal, family, or household purposes.

4

29. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

30. Upon information and belief, Exhibit A is a form debt collection letter used by LTDFS to attempt to collect alleged debts.

31. The header in Exhibit A contains the following:

```
CREDITOR:
LTD ACQUISITIONS, LLC.
CREDITOR ACCOUNT #:
XXXXXXXXXXXX2356

LTD REF NO:        ████████0414
BALANCE:           $560.03
```

Exhibit A.

32. Exhibit A states that the creditor is LTDA.

33. Exhibit A does not state that LTDA purchased the debt from some other entity.

34. Upon information and belief, the alleged debt referenced in Exhibit A was not originally owed to LTDA.

35. Upon information and belief, LTDA allegedly purchased the debt referenced in Exhibit A from some original creditor after Plaintiff defaulted on the terms of payment.

36. Exhibit A does not identify the name of the original creditor.

37. Upon information and belief, LTDA does not issue credit to consumers, and instead purchases and attempts to collect charged-off consumer credit accounts.

38. The unsophisticated consumer would be unable to determine who actually issued the account associated with the debt that Defendants were attempting to collect with Exhibit A.

39. The name of the original creditor is a material aspect of a debt and should be clearly communicated to avoid confusing consumers about the nature of the debt. *E.g., Moore v.*

5

*Express Recovery Serv.*, No. 16-cv-126, 2019 U.S. Dist. LEXIS 718, at * (D. Utah Jan. 2, 2019) (collecting cases) ("A debt collector can violate [the FDCPA] by misstating or failing to state the original creditor on a collection letter."); *see also, Flores v. Collection Consultants of Cal.*, No. 14-cv-771, 2015 U.S. Dist. LEXIS 186981, at * 12-13 (C.D. Cal. June 2, 2015) (collecting cases) ("[C]ourts have routinely found that misstating or failing to identify the original creditor unquestionably could frustrate a consumer's ability to intelligently choose his or her response."); *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1121 (9th Cir. 2014) ("in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way."), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014); *Winslow v. Forster & Garbus, LLP*, 2017 U.S. Dist. LEXIS 205113, at *28 (E.D.N.Y. Dec. 13, 2017); *Heathman v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 98742, at *13 (S.D. Calif. July 13, 2013) ("because Defendant's failure to identify Chase, the original creditor, is both deceptive and material under the least sophisticated consumer standard, it constitutes a violation of § 1692e."); *Scheunemann v. J.C. Christensen & Assocs.*, 802 F. Supp. 2d 981, 986 (E.D. Wis. July 18, 2011); *Zoerb v. Nat'l Collegiate Sutdent Loan Trust 2006-3*, No. 14-cv-468, 2017 U.S. Dist. LEXIS 53333, at *2 (S.D. Cal. Apr. 5, 2017) (approving class action settlement of claims that defendants "as assignees of student loan debts, failed to properly identify the original creditor in various state court collections actions.").

40. It is especially important for collection agencies to identify the original creditor when a debt is sold after the consumer has allegedly defaulted because many debt buyers do not actually begin reporting debts to consumer reporting agencies (i.e., "credit bureaus") for several months or more.

41. Thus, even assuming the consumer had a credit report available, it may be difficult if not impossible to identify the nature of the alleged debt, determine whether the debt was legitimate or not, and ensure that the credit report is updated in the event that the consumer, in fact, pays the amount sought.

42. Moreover, upon information and belief, Exhibit A was the first written communication LTDFS mailed to Plaintiff regarding the alleged debt owed to LTDA.

43. Upon information and belief, the alleged debt referenced in Exhibit A was associated with Plaintiff's "Indigo mastercard" account, issued by Celtic Bank and serviced by a servicing entity named Bankcard Services and/or FS Card Services. *See,* https://www.indigocard.com/.

44. On or about April 3, 2018—roughly two months before LTDFS mailed Exhibit A—Celtic Bank and/or the servicer mailed an account statement to Plaintiff regarding his "Indigo mastercard" account ending in 2356. A copy of this account statement is attached to this complaint as Exhibit B.

45. Exhibit B contains the following:

**Payment Information**

| | |
|---|---|
| Total New Balance | $560.03 |
| Minimum Payment Due | $320.00 |
| Payment Due Date | May 02, 2018 |

**Late Payment Warning:** If we do not receive your minimum payment by the payment due date listed above, you may have to pay a late fee of up to $37 and your Purchase APR may be increased up to the Penalty APR of 29.90%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 8 month(s) | $590 |

If you would like information about credit counseling services, call 1-866-946-9545.

46. <u>Exhibit B</u> represents that Plaintiff could return his Indigo mastercard account to a current status by tendering a minimum payment of $320.00 on or before May 2, 2018.

47. Even assuming Celtic Bank or one of its servicing agents had previously mailed Plaintiff a Notice of Right to Cure default on this account, <u>Exhibit B</u> represents to Plaintiff that Celtic Bank and its servicing agents were waiving any right to accelerate the balance of Plaintiff's "Indigo mastercard" account until after May 2, 2018.

48. Assuming Celtic Bank immediately accelerated upon failure to pay the minimum payment on or before the payment due date stated in <u>Exhibit B</u>, the account would have been accelerated on or about May 3, 2018, roughly 31 days before the date of <u>Exhibit A</u>.

49. Assuming Celtic Bank sold the debt to LTDA after accelerating the balance, LTDA could not have taken assignment of the debt until sometime around May 4, 2018.

50. 15 U.S.C. § 1692g(a) requires debt collectors to provide a written "validiation notice" including certain information to consumers within five days of the initial contact with the consumer:

> **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of

> a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

51. Even assuming LTDA immediately assigned the account to LTDFS for collection purposes after it took assignment, LTDFS likely could not have mailed its initial collection letter to Plaintiff to comply with 15 U.S.C. § 1692g(a) for at least a few days.

52. May 6, 2018 was a Sunday so, assuming LTDFS mailed a collection letter sometime around May 5, 2018, Plaintiff likely would not have received that letter until May 8, 2018 at the earliest.

53. The thirty-day period referenced in 15 U.S.C. § 1692g(a)(3)-(5) begins when the consumer *receives* the validation notice and the consumer may trigger the dispute rights by *mailing out* the dispute as late as the thirtieth day after receiving the validation notice. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997); *see also, Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 94-95 (2d Cir. 2008) (adopting the Seventh Circuit's reasoning in *Chauncey*).

54. Because of the vagaries of the mail, if a consumer mails out a dispute on the thirtieth day after receiving the validation notice, the collection agency may not receive that dispute for as much as forty days after it mailed the validation notice.

55. Because receipt of effective disputes can take up to forty days, many collection agencies wait forty days or more between mailing the validation notice and "following up" with a second collection letter.

56. <u>Exhibit A</u>, which does not contain the validation notice, was mailed roughly thirty-two (32) days after the payment due date stated in <u>Exhibit B</u>.

57. Upon information and belief, Defendants did not send a written communication containing a debt validation notice to Plaintiff prior to mailing <u>Exhibit A</u>.

58. Plaintiff reviews his mail personally every day. He does not dispose of collection letters, but brings them to his attorneys.

59. Plaintiff had lived at his current address for more than one year before <u>Exhibit A</u> was mailed. He had not moved residences and was not in the process of moving in May and June 2018.

60. Moreover, Plaintiff has been involved in several other billing and collection disputes. As a result, he is careful not to dispose of any mail that could be relevant to those disputes.

61. If Defendants had mailed a collection letter to Plaintiff, he would have received it and brought it to her attorneys.

62. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

63. Further, for the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, Defendants' failure to provide the validation notice is a material false statement.

64. The debt validation notice informs consumers of the importance of communicating disputes in writing. *See,* 15 U.S.C. § 1692g(b), which states:

**Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector

10

obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

65. Failing to provide the validation notice interferes with the 30-day period in which the consumer has the right to temporarily stop collection activities. *See*, *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 348 (7th Cir. 2018) ("Section 1692g(b) confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand cessation of all collection activities.") (quoting *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998)).

66. Moreover, the failure to provide the validation notice in this case is especially confusing and misleading because Defendants are presumably initiating the first collection efforts on the account after it was purportedly assigned to LTDA.

67. Indeed, Exhibit A does not state the name or address of the original creditor; unless the consumer happened to retain prior billing records, there would be no way to identify the account that Defendants were attempting to collect.

68. Plaintiff was confused and misled by Exhibit A.

69. The unsophisticated consumer would be confused and misled by Exhibit A.

### *The FDCPA*

70. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to

11

protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal

12

bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

71. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

72. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

73. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

74. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

75. 15 U.S.C. § 1692g(a) requires debt collectors to provide certain information and notices to consumers within five days of the initial contact with the consumer.

## COUNT I – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Defendants did not provide the validation notice as required by 15 U.S.C. § 1692g(a).

78. Exhibit A does not identify the "Original Creditor."

79. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692g(a).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of a Class.

81. The Class consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter, (c) stating that LTDA is the "Creditor" of the debt, (d) and without identifying the "Original Creditor" of the debt, (e) where the debt was incurred for personal, family or household purposes, (f) and the letter was mailed between April 30, 2018 and April 30, 2019, inclusive, (g) and was not returned by the postal service.

82. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

83. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the FDCPA.

84. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

85. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

86. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

87. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 30, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com